SLICK. The SAM. See Cases Nos. 12,282 and 12,283.

## Case No. 12,944.

### Ex parte SLOAN et al.

[4 Sawy. 330;[1] 23 Int. Rev. Rec. 354; 10 Chi. Leg. News, 26.]

District Court, D. Nevada. Sept. 21, 1877.

COURTS—CRIMINAL JURISDICTION—INDIAN RESERVATIONS.

After a state has been admitted into the Union, the fact that within its boundaries land, the fee of which is in the United States, is set apart as an Indian reservation, is not enough, of itself, to give a United States court jurisdiction to try a person for a murder committed within the limits of such reservation.

The prisoners [Jerry Sloan and others] having been committed to answer indictments charging them with the murder of two men, were brought up on a writ of habeas corpus, and asked to be discharged from custody, upon the ground that the indictments showed

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

upon their face that the circuit court of the United States had no jurisdiction to try them. Both indictments describe the place where the crime is alleged to have been committed in the same words, as follows: "At and within the boundaries of the Moapa Indian reservation of the United States of America, in the district aforesaid" (Nevada). The indictments are found under section 5339 of the Revised Statutes, which provides that "every person who commits murder within any fort, arsenal, dock-yard, magazine, or in any other place or district of country under the exclusive jurisdiction of the United States," shall suffer death. The constitution of the United States (article 1, § 8) gives congress power to exercise exclusive legislation "over all places purchased, by consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dockyards and other needful buildings," and, in another clause, power to "regulate commerce with the Indian tribes." Nevada was admitted into the Union on an equal footing with the original states, October 31, 1864 (13 Stat. 749). By the act of May 5, 1866 (14 Stat. 43), there was "added to and made part of" the state other territory upon which the present Moapa Indian reservation is situated. The reservation was set apart by the president on March 12, 1873. It is admitted that when Nevada became a state, and when the act of May 5, 1866, was passed, the fee of the land now covered by the reservation was in the United States. It is, perhaps, also worthy of notice that the Revised Statutes of the United States do not contain the definition of "Indian country" found in the act of June 30, 1834 (4 Stat. 728), nor that section of the same act which provided that the laws of the United States, for punishment of crimes committed within the sole and exclusive jurisdiction of the United States, shall be in force in the Indian country. The marshal's return to the writ shows that he holds the prisoners, by virtue of a commitment issued out of the circuit court, to answer the indictments in question.

Robert M. Clarke and Thomas H. Wells, for petitioners.

Charles S. Varian, U. S. Atty., and Ellis & King, opposed.

HILLYER, District Judge. Upon this state of facts the inquiry is, how and when, if ever, the United States has acquired exclusive jurisdiction over this reservation, or the power of exclusive legislation, which is the same thing. U. S. v. Bevans, 8 Wheat. [21 U. S.] 336.

Nevada, having been admitted into the Union upon an "equal footing with the original states," must have the same jurisdiction over the territory within her limits that those states have over their territory.

Before the establishment of the United States government, the original states possessed full sovereign power; they retain it

now, except so much as they have parted with for national purposes.

Within the original states the only mode by which the government can acquire exclusive jurisdiction over a piece of land is by purchase, with the consent of the state, for certain specified purposes. Mere occupation of land, of which it owned the fee, within a state could not give the United States the power of exclusive legislation. How the United States is to acquire exclusive legislation over lands of which it is the owner when the state is admitted, may be a question; but it seems plain that in such case there must be a cession of its ordinary jurisdiction by the state in some way.

In the case of People v. Godfrey, 17 Johns. 225, a murder committed by one soldier upon another within Fort Niagara was held to be clearly within the jurisdiction of the state, although that fort had been occupied as a fortress since 1759; first by the French, then by the British, and lastly by the United States. Such occupation was held not at all inconsistent with the rights of the state to exercise its ordinary jurisdiction within the fort.

Jurisdiction to legislate over a district of country has no necessary connection with the ownership of the fee-simple of the soil; in fact, the two are seldom united. Com. v. Young. Brightly. N. P. 302.

Nearly all the land within Nevada was, and indeed still is, the property of the United States. By admitting the state upon the terms it did, the United States consented to occupy the position of a private proprietor of the lands it owned within the new state, only stipulating to be exempt from taxation and interference in disposing of its lands. By its admission, and by the act of May 5, 1866, Nevada acquired the same jurisdiction over the land now embraced by the Moapa reservation as over any other portion of its territory. That an executive order made long afterward could not, proprio vigore, take away the power of the state to legislate for this territory and confer it exclusively on the United States is a plain proposition.

The fee of the land covered by the reservation is still in the United States. and the land is occupied by the government as an Indian reservation.

In this respect, this case is like that of U. S. v. Stahl [Case No. 16,373]. in which Mr. Justice Miller held that such ownership, together with the occupation by the United States as a fort, did not oust the state of Kansas of its ordinary jurisdiction, acquired by its admission into the Union on an equal footing with the original states, to punish murder committed within the fort. And in another case, the same justice held that the circumstance that the homicide was committed on an Indian reservation was not enough, of itself, to give a United States court jurisdiction. U. S. v. Ward [Id. 16,639]. See, also, U. S. v. Rogers, 4 How. [45 U. S.] 567;

U. S. v. Bailey [Case No. 14,495]; People v. Lent, 2 Wheeler, Cr. Cas. 548; and U. S. v. Sa-Coo-Da-Cot [Case No. 16,212].

The authorities, both national and state, are uniform, and are unequivocally against the jurisdiction of a United States court in a case like the present. I have no doubt that, the land now constituting the Moapa Indian reservation having been made a part of the state of Nevada. without any reservation of jurisdiction in favor of the United States, the only way which that government can get exclusive jurisdiction over it must be by cession from the state.

The fact that the persons killed were employed at the time by the United States can, of itself, make no difference. There is no law of the United States, if congress has the power to make such an one, declaring the killing of a government employee, without reference to the place where he is killed, a crime against the United States.

Nor is there any question here as to the extent of the power of congress to regulate commerce with the Indian tribes. The courts of the United States have no criminal jurisdiction, except such as is given to them by some law of the United States, and congress has not yet attempted to create the crime of murder under the power given it to regulate commerce with the Indian tribes.

The district attorney insisted that the allegations of the indictments in reference to the place where the crime is charged to have been committed were defective at most, and did not show such an entire want of jurisdiction as would justify a discharge of the prisoners upon habeas corpus. The language of the indictments has been given above, and it shows the crime to have been done on the "Moapa Indian reservation." No laws or resolutions of congress or the state of Nevada, or other matters which affect the question of jurisdiction, have been brought to my notice, either by the return to the writ or the argument, nor is it seriously urged that any such matters do, in fact, exist. Under such circumstances, I do not feel justified in restraining the petitioners of their liberty, because it is possible to suggest facts which would give the court jurisdiction, but which are neither set out in the indictment nor the return, nor shown in any way to be anything more than creatures of the prosecuting officer's imagination.

The return of the officer shows that he holds these men by virtue of a commitment to answer these indictments. In such a case it becomes a duty to look into the indictments, and if neither of them charges an offense within the jurisdiction of a court of the United States, the prisoners are entitled to their discharge. In my judgment, neither of these indictments does charge the prisoners with the commission of a crime triable in the courts of the United States. The prisoners are, therefore, to be discharged from the custody of the marshal.

It was suggested at the hearing that, in case of the discharge of the prisoners upon this writ, the state authorities desired to take and prosecute them for these homicides. In accordance with this suggestion, and finding higher authority for such a course, the marshal will be directed, when he releases the prisoners, to deliver them to any state officer in readiness to receive them. U. S. v. Sa-Coo-Da-Cot, supra; U. S. v. Cisna [Case No. 14,-795].

Ordered accordingly.