### UNITED STATES v. SAN FRANCISCO BRIDGE CO.

(District Court, N. D. California. June 25, 1898.)

No. 3,485.

1. INFORMATION—VIOLATION OF EIGHT-HOUR LAW—INTENTION.
   Under Act Aug. 1, 1892, making it unlawful for contractors on public works to require or permit laborers to work more than eight hours in any calendar day, the intention is an essential ingredient of the offense, and must be charged in an indictment or information.

2. SAME—CONSTRUCTION AFTER VERDICT.
   An allegation in an information that defendant, as a contractor on public works, "required" laborers to work more than eight hours in a calendar day, necessarily implies that the act was done intentionally, and is a sufficient allegation of the intent to support the information after verdict.

3. UNITED STATES—JURISDICTION—LAND PURCHASED FOR PUBLIC BUILDING.
   A state retains complete and exclusive political jurisdiction over land within its limits purchased by the United States as a site for a public building, unless such purchase was with the consent of its legislature, or jurisdiction has been otherwise ceded to the United States, and any offense against its laws committed thereon is punishable in its courts.

4. SAME—PUBLIC WORKS—REGULATION OF HOURS OF WORK.
   Congress has power to regulate the hours of labor which may be required or permitted on public buildings or works of the United States,

and the federal courts have jurisdiction to punish violations of such regulations, though the buildings or works where committed may be situated or land within the political jurisdiction of a state.

The San Francisco Bridge Company was convicted of the violation, as a contractor on the new post office at San Francisco, of the act of congress of August 1, 1892, by requiring and permitting laborers to work on such building more than eight hours in one calendar day. Heard on motion in arrest of judgment.

Samuel Knight, Asst. U. S. Atty.

R. Percy Wright, for defendant.

DE HAVEN, District Judge. The defendant has been convicted of the violation of "an act relating to the limitation of the hours of daily service of laborers and mechanics employed upon the public works of the United States and of the District of Columbia," approved August 1, 1892 (2 Supp. Rev. St. [2d Ed.] p. 62), and has interposed a motion for an arrest of judgment. Section 1 of the act referred to makes it unlawful for any officer of the United States government or of the District of Columbia, or for any contractor or subcontractor whose duty it shall be to employ, direct, or control the services of laborers or mechanics upon public works of the United States or of the District of Columbia, "to require or permit any such laborer or mechanic to work more than eight hours in any calendar day except in case of extraordinary emergency." By section 2 of the act it is provided "that any officer or agent of the government of the United States or of the District of Columbia, or any contractor or subcontractor whose duty it shall be to employ, direct, or control any laborer or mechanic employed upon any of the public works of the United States or of the District of Columbia, who shall intentionally violate any provision of this act, shall be deemed guilty of a misdemeanor."

The information charges that the defendant was a contractor upon public works of the United States, to wit, the new post office of the United States in the city and county of San Francisco; that as such contractor its duty was to employ, direct, and control laborers employed and working thereon; and that the defendant did on the 1st day of December, 1897, in violation of the act of congress above referred to, "require and permit said laborers to work more than eight hours in the calendar day last aforesaid, to wit, nine hours and forty minutes in such day, upon said contract and public works, there being then and there no case of extraordinary emergency for the employment of such laborers for the length of time last aforesaid, or for any length of time in excess of said eight hours in said calendar day."

The motion in arrest of judgment is based upon two grounds: First, it is claimed that the information does not charge that the defendant intentionally required or permitted the laborers, employed by it upon the public works referred to in the information, to labor more than eight hours in each day; second, because it is not alleged in the information, nor was the fact proved upon the trial, that the United States has exclusive jurisdiction over the land upon which the post office referred to in the information is being constructed.

1. There can be no doubt that, in order to constitute the crime de-

scribed in the law under which the defendant is prosecuted, there must be an intentional violation of its provisions by a defendant; that is to say, the act which that law forbids must be knowingly or intentionally committed, in order to make the doing of such act a crime. U. S. v. John Kelso Co., 86 Fed. 304; U. S. v. Ollinger, 55 Fed. 959. This particular intention, constituting, as it does, an essential element of the crime, as described in the law, must therefore be alleged in the information or indictment in order to sufficiently charge a defendant with the commission of such offense. 1 Bish. Cr. Proc. §§ 523–525; Com. v. Boynton, 12 Cush. 499; Com. v. Slack, 19 Pick. (Mass.) 304. After verdict, however, and in passing upon a motion in arrest of judgment, the allegations of an indictment or information should be liberally construed, and an informal or imperfect allegation of an essential fact will be deemed a sufficient averment of such fact. U. S. v. Noelke, 1 Fed. 426. The information in this case does not in express terms charge that the act of the defendant in requiring and permitting its laborers to work more than eight hours in each calendar day was intentional, but such charge is necessarily implied from the language used in the information. As before stated, the intention which enters into the offense described in the act of congress above referred to is simply an intention to do the act which is prohibited by that statute, and such intention is, in my opinion, in effect charged by the information in this case. The language of the information is that the defendant did require and permit its laborers to work more than eight hours on the day stated. To "require" is to order, direct, or command, and the charge that the defendant required its laborers to work more than eight hours on the day named in the information necessarily implies that in making such requirement there was an intention upon the part of the defendant that its order or direction should be obeyed. So, also, the word "permit," as used in the statute, means to allow or consent to; and the charge in the information that the defendant permitted its laborers to work more than the prescribed number of hours may properly be regarded as the legal equivalent of an allegation that such work was done with its knowledge and consent, and, if so, there was an intentional violation of the law by the defendant. The information would doubtless have been in better form and more valuable as a precedent if it had followed the language of the statute, and alleged, in so many words, that the defendant intentionally violated the provisions of the law by directing and permitting laborers employed by it to work more than the prescribed number of hours; but, in my opinion, the information is sufficient to support a judgment of conviction.

2. Section 8 of article 1 of the constitution provides that congress shall have power "to exercise exclusive legislation in all cases whatsoever, over such district (not exceeding ten miles square) as may, by cession of particular states, and the acceptance of congress, become the seat of the government of the United States, and to exercise like authority over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dockyards and other needful buildings." It is not alleged in the information, nor does the fact otherwise appear,

that the land upon which the new San Francisco post office is being constructed was purchased by the United States with the consent of the state, or that political jurisdiction over the same has been otherwise ceded to the United States by the state. Upon this state of facts, it must be held that the state of California retains complete and exclusive political jurisdiction over such land, and, this being so, there can be no question that persons there committing murder, or any other offense denounced by its laws, would be subject to trial and punishment by the courts of the state. 2 Story, Const. § 1227; People v. Godfrey, 17 Johns. 225; Ex parte Sloan, 4 Sawy. 330, Fed. Cas. No. 12,944; U. S. v. Stahl, 1 Woolw. 192, Fed. Cas. No. 16,373; U. S. v. Ward, 1 Woolw. 17, Fed. Cas. No. 16,639; U. S. v. Cornell, 2 Mason, 60, Fed. Cas. No. 14,867. In the case last cited it was said by Mr. Justice Story:

"But although the United States may well purchase and hold lands for public purposes, within the territorial limits of a state, this does not, of itself, oust the jurisdiction of sovereignty of such state over the lands so purchased. It remains until the state has relinquished its authority over the land, either expressly or by necessary implication."

In view of this principle of constitutional law, it is now urged that this court is without jurisdiction to pronounce judgment upon the verdict, and that the act of congress should be construed as only applying to public works upon land over which the United States has the right, under the constitution, to exercise exclusive political jurisdiction and dominion; that is to say, that it should be construed as applying only to public works in the District of Columbia, or in the territories of the United States, or upon lands purchased by the United States with the consent of the state, for the erection of forts, magazines, arsenals, dockyards, and other needful buildings. In support of this position, counsel for the defendant has argued, with great earnestness, that, unless so construed, the statute cannot be upheld, because congress has no power to legislate in regard to the number of hours laborers shall be permitted to work each day in places or upon land not within the exclusive political jurisdiction of the United States. The statute under consideration, however, by its express terms, is applicable only to public works of the United States and of the District of Columbia; so that the question presented here is not whether congress possesses the power to legislate generally in regard to the number of hours laborers shall be permitted to work in any one day when engaged in the construction of some building or in some other employment over which the United States has no right to exercise any supervision or control, but rather this: Has congress the power to prescribe the terms and conditions under which labor shall be performed in the construction of public works of the United States, and without reference to the fact whether such public works are or are not upon land over which the national government exercises exclusive political jurisdiction? I entertain no doubt of the authority of congress in this respect. Public works are instrumentalities for the execution of the powers of government. In the construction of its public works, the United States exercises a power which belongs to it as a sovereign nation, and, as a necessary incident of its sovereignty, has

the right to legislate in regard to all matters relating to the construction of such works, including the number of hours which shall constitute a day's labor for those employed thereon. Laws have been passed limiting the hours for the labor of letter carriers in any one day (25 Stat. 157); and for those employed in the navy yards of the United States (12 Stat. 587); and for all laborers and mechanics employed "by or on behalf of the government of the United States" (15 Stat. 77); and the power of congress to pass such laws has never been seriously questioned. In my opinion, congress may also provide that laborers upon public works of the United States, whether employed directly by the government or by a public contractor, shall not be required or permitted to work more than eight hours in one day, and may compel obedience to such a law by providing that its violation shall constitute an offense against the United States, and be punished as such. Nor is the power of congress to thus legislate in the least impaired or affected by the fact that such public works may be erected upon land over which the state retains political jurisdiction, as the sovereignty of the state does not extend to matters connected with or incident to the construction of public works of the United States; and congress in providing, as it has, for the punishment of any contractor upon such public works, or any officer of the United States who should violate the provisions of the law under consideration, was not legislating upon a subject which in any manner trenches upon the reserved powers of the state. The subject-matter of the law is one which concerns only the government of the United States, and over which it has the right to exercise supreme and exclusive control, notwithstanding the fact that the state, for all purposes relating to the government of the state and the administration of its laws, retains political jurisdiction over the land upon which such public works may be erected. This conclusion necessarily results from a consideration of the fact that, under American constitutional law, the national government and the states which compose it are clothed with separate powers of sovereignty in relation to the subjects within their respective constitutional spheres of action, and each may therefore exercise the powers pertaining to its own sovereignty without coming into conflict with the other. This view is in harmony with what was said by Chief Justice Taney in delivering the opinion of the supreme court of the United States in Ableman v. Booth, 21 How. 516:

"The powers of the general government and of the state, although both exist and are exercised within the same territorial limits, are yet separate and distinct sovereignties, acting separately and independently of each other, within their respective spheres."

The motion will be denied.