# PENN BRIDGE COMPANY *v.* UNITED STATES.

---

CONSTITUTIONAL LAW; EIGHT-HOUR LABOR LAW; "EXTRAORDINARY EMERGENCY;" QUESTIONS OF LAW AND FACT.

1. Secs. 892 and 893, D. C. Code (31 Stat. at L. 1334, chap. 854), limiting to eight hours the daily service of laborers and mechanics on public works in this District, except in cases of extraordinary emergency, and punishing employers who require or permit longer service, are constitutional.

2. The term "extraordinary emergency," within the meaning of sec. 892 D. C. Code, limiting to eight hours the daily labor on public works, except in case of such emergency, imports a sudden and unexpected happening; an unforeseen occurrence or condition calling for immediate action to avert imminent danger to health, or life, or property; an unusual peril, actual, and not imaginary, suddenly creating a situation so different from the usual or ordinary course in the prosecution of the public work that the court may and must conclude that Congress contemplated excepting from the operation of the law such an occurrence, so sudden, rare, and unforeseen.

3. Whether, in a prosecution of a contractor for violation of secs. 892, 893, D. C. Code, limiting to eight hours the daily service of laborers and mechanics on public works, except in case of extraordinary emergency, the evidence shows that such an emergency existed, is a question of law for the court, and not of fact for the jury.

4. In such a prosecution, where the public work consisted of the erection of a concrete bridge, the trial court properly strikes out evidence in behalf of the accused, claimed to show the existence of an extraordinary emergency, when to the effect that a change by the public officials in the specifications required the contractor to put in a certain amount of concrete masonry within a time limited; that it was not possible to do the work within the time if only eight hours' service was required, because if the work was stopped at the end of eight hours the concrete would harden and might cleft, causing cracks and perhaps disintegration of the arch of the bridge; and that if the gang of workmen had quit at the end of eight hours it would have been impossible to secure men who would work only a few hours a day.

No. 1739.  Submitted March 5, 1907.  Decided May 7, 1907.

IN ERROR to the Police Court of the District of Columbia. *Judgment affirmed.*

The COURT in the opinion stated the facts as follows:

This is a writ of error to the Police Court of the District of Columbia, wherein the plaintiff in error, the Penn Bridge Company, was convicted of violating the eight-hour law upon three separate informations substantially charging that the Penn Bridge Company was a contractor to erect in the District of Columbia a concrete bridge on 16th street, over Piney Branch creek. That the plaintiff in error was a contractor upon a public work of the District of Columbia was admitted. It was charged that, on the days mentioned in the three separate informations, the Penn Bridge Company unlawfully and intentionally required and permitted Oscar Shillingberg to work more than eight hours on each day. Upon the undisputed testimony the Penn Bridge Company, which had a contract with the District of Columbia to construct this public work, prosecuted it; and on the 21st, 22d, and 26th days of September, 1906, Shillingberg, a carpenter, actually worked upon the bridge more than eight hours per day. It was further proved that Shillingberg worked more than eight hours per day on many other days, and that during the month of September in that year all the car-

penters worked from 7 o'clock in the morning until half past 5 in the afternoon, except during a half-hour recess at noon.

On behalf of the defendant, evidence was offered tending to show that the reason why Shillingberg and other carpenters worked more than eight hours a day was that during September the bridge company was engaged in the construction of the arch of the bridge; and that the specifications, which had been changed after the date of the contract, required the bridge company to put in a certain amount of concrete masonry within a time limited; and that it was not possible to do the work specified and required within a period of eight hours' daily work, because if the work was stopped at the end of eight hours the concrete would harden and might be cleft, causing cracks and perhaps disintegration of the arch. The work specified could not be completed in eight hours; and if the first gang of workmen had quit at the end of eight hours, the bridge company could not secure men who would work a few hours only each day. Meigs, the superintendent of the plaintiff in error, testified the work was done under the direction of the engineers of the District, who knew that the contractor's men worked more than eight hours daily; the employees were paid by the hour, and only worked more than eight hours a day on account of what the contractor believed to be extraordinary emergencies. The plaintiff in error offered to show that the first emergency arose when the engineers of the District changed the plans in respect to the depth of the excavation to be made, and that it was impossible to work men in shifts because of the scarcity of workmen.

Upon the motion of counsel for the defendant in error the court struck out all the evidence introduced by the defendant to show that an extraordinary emergency existed which required the employment of Shillingberg more than eight hours on the three days named in the declaration.

*Mr. M. J. Colbert* and *Mr. Edmund Brady* for the plaintiff in error:

1. The statute passed upon in *Atkin* v. *Kansas,* 191 U. S. 207, was known as the eight-hour law of Kansas of 1891, and is not

in all respects similar to our statute, although it is more or less similar to it. In that case the Supreme Court of the United States, speaking through Mr. Justice Harlan, upheld the constitutionality of such legislation. It is suggested, however, that three able members of the Supreme Court dissented from the decision of the majority, and that the same question is again before the Supreme Court of the United States for review, and that the action of this court should await the decision of the Supreme Court of the United States on this same question. It is urged that all that the Supreme Corut of the United States decided in that case was that a statute providing that eight hours should constitute a day's work for all laborers employed by the state or by any of its municipalities, and making it unlawful for anyone thereafter contracting to do any public work to require or permit a laborer to work more than eight hours in any one calendar day, is valid. We do not understand the court in that case to say that it approved and upheld the legislation, which makes the violation of a civil contract a criminal offense. As was said by the Supreme Court of the United States in *Robertson* v. *Baldwin,* 165 U. S. 281, the breach of a contract for personal service has not, however, been recognized in this country as involving a liability to criminal punishment, except in the case of soldiers and sailors and possibly some others; nor would public opinion tolerate a statute to that effect.

The decisions against the validity of the legislation now under consideration are numerous, and the decisions on both sides of the question are practically all collected in volume 65 of the Lawyers' Reports Annotated, at page 33, where the court will find a full discussion of this subject, and practically all the cases gathered together.

2. The police court was in error in refusing to permit the defendant to offer testimony tending to show that the work in question was done under conditions which brought it within the emergency clause contained in the statute. The defendant attempted to show that when the contract in question was made it could have done the work required of it by working its laborers and mechanics only eight hours per day. The engineers of the

District of Columbia discovered conditions which, to their mind, made it essential and necessary to deepen the excavation in some respects, and to change the work in others, so that the Penn Bridge Company found it impossible to go ahead with the work unless some of its employees worked more than eight hours per day. And they further attempted to show that this was a condition which they could not have anticipated at the time the contract was executed.

We have been unable to find any Federal decisions on this feature of the case, as to what constitutes an extraordinary emergency, except the decision of a *nisi prius* judge in Massachusetts, which is not reported. See, however, *People ex rel. Usoy* v. *Waring,* 52 N. Y. App. Div. 36.

*Mr. Daniel W. Baker,* United States Attorney for the District of Columbia, and *Mr. James M. Proctor,* Assistant, for the defendant in error.

Mr. Justice McComas delivered the opinion of the Court:

Counsel for the plaintiff in error claim that the court below erred in not directing a verdict for the defendant in each case, upon the ground that the law upon which the informations were based was unconstitutional, and also that the court erred in striking out the evidence of the defendant introduced and proffered, as we have just stated; and also in deciding that the question whether or not such evidence constituted an "extraordinary emergency" was not a question of fact to be determined by the jury only.

First. These prosecutions in the court below were based upon the following sections of the District Code:

"Sec. 892. Limitation Of Hours Of Daily Service For Laborers And Mechanics On Public Works.—The service and employment of all laborers and mechanics who are now, or may hereafter be, employed by the government of the United States, by the District of Columbia, or by any contractor or subcontractor upon any of the public works of the United States or of

the said District of Columbia, is hereby limited and restricted to eight hours in any one calendar day; and it shall be unlawful for any officer of the United States government or of the District of Columbia, or any such contractor or subcontractor, whose duty it shall be to employ, direct, or control the service of such laborers or mechanics, to require or permit any such laborer or mechanic to work more than eight hours in any calendar day, except in case of extraordinary emergency.

"Sec. 893. Any officer or agent of the government of the United States or of the District of Columbia, or any contractor or subcontractor, whose duty it shall be to employ, direct, or control any laborer or mechanic employed upon any of the public works of the United States or of the District of Columbia, who shall intentionally violate any provision of the last preceding section, for each and every such offense shall be punished by a fine not to exceed $1,000, or by imprisonment for not more than six months, or both." [31 Stat. at L. 1334, chap. 854.]

In *Atkin* v. *Kansas,* 191 U. S. 207, 48 L. ed. 148, 24 Sup. Ct. Rep. 124, where a similar statute of the State of Kansas was upheld, the Supreme Court has in effect decided that the District statute we here consider is constitutional. The service and employment of Shillingberg and his coworkers by the plaintiff in error, a contractor with the District of Columbia, upon this public work of the District of Columbia, was by this statute limited and restricted to eight hours in any one calendar day; and it was unlawful for this contractor to require or permit Shillingberg to work more than eight hours in any one calendar day, except in case of extraordinary emergency; and if the plaintiff in error violated this provision, for each and every such offense he became liable to be punished by a fine or by imprisonment, or both, as provided by this statute. The government of the District of Columbia is simply an agency of the United States for conducting the affairs of its government in the Federal District, and this work on the Piney Branch creek bridge was of a public, and not of a private, character. As the Supreme Court has said, in effect, there is no possible ground to dispute the power of Congress to declare that no one undertaking work for the District

of Columbia should permit or require an employee on such work to labor more than eight hours in any one calendar day, and to inflict punishment upon those coming within the law and disregarding it. To prohibit a contractor from doing public work for the District in his own way and in his own time, without regard to the will of Congress, does not infringe upon his liberty. Congress may lawfully prescribe the conditions upon which it will permit public work in this District to be done in its behalf; and by this statute Congress appears to have determined that to restrict a day's work to eight hours tends to promote morality, to improve the physical and intellectual condition of working men, and to enable them to better discharge their duties as citizens of the Republic. It is not in derogation of the liberty of either employee or employer, to make it a criminal offense for this contractor for this public work to permit or require his employees to work more than eight hours in one calendar day. No employee has an absolute right to perform labor for the State, and no contractor for a public work can excuse a violation of his agreement with the government by doing anything which under the statute, made part of its contract, he is distinctly forbidden to do. The plaintiff in error is not by such a statute denied the equal protection of the law, for this statute prescribes a rule of conduct which applies alike to all who contract to do work for the District of Columbia, and alike to all employed to perform labor on such a work, and Congress has the right to prescribe the conditions under which it will permit work of this kind to be done for the District of Columbia. By this law it has done so, and in so doing has not infringed the personal rights of either employers or employees upon such public work. The United States in this Federal District may dictate the terms and conditions of the contracts this District may make, and it may prescribe the hours of labor to be observed by its contractors and their employees on its public works. See *Atkin* v. *Kansas* (*supra*) ; *United States* v. *Martin,* 94 U. S. 400, 24 L. ed. 128 ; *United States* v. *Driscoll,* 96 U. S. 421, 24 L. ed. 847 ; and *United States* v. *San Francisco Bridge Co.* 88 Fed. 891.

Second. The court below committed no error in excluding

from the consideration of the jury the testimony introduced and
proffered by the defendant to show that in this case an "extraor-
dinary emergency" had happened, within the meaning of this
statute. It was the duty of the court to determine, what jurors
unguided could not settle for themselves, what would amount to
an "extraordinary emergency." This question was one of statu-
tory construction for the court. It was for the court to say
whether all the evidence admitted and proffered tended in this
case to prove the existence of an "extraordinary emergency."
The court here rightly decided that such evidence did not tend
to prove its existence. In this statute the term "extraordinary
emergency" imports a sudden and unexpected happening; an
unforeseen occurrence or condition calling for immediate action
to avert imminent danger to health, or life, or property; an un-
usual peril, actual, and not imaginary, suddenly creating a situa-
tion so different from the usual or ordinary course in the prose-
cution of the public work that the court may and must conclude
that Congress contemplated excepting from the operation of this
law such an occurrence, so sudden, rare, and unforeseen. In
the case before us the District and the contractor should know
that concrete in an arch may not harden in a given part of eight
hours; and, since the contract permitted the District engineers
to make changes in the plan, the contractor might have con-
templated that the excavation would need greater depth to sup-
port the arch of the bridge than an earlier examination had
shown likely to be required. The evidence relied upon by the
defendant would not have justified the jury in concluding that
either or both of these circumstances constituted an extraordi-
nary emergency. The court could have so instructed the jury,
and it therefore committed no reversible error in excluding all
this evidence from the consideration of the jury, since it was
offered only to prove an extraordinary emergency, and it did
not tend to prove it. See *United States* v. *Ellis,* U. S. Dist. Ct.
Mass. [affirmed in 206 U. S. 246, 51 L. ed. —, 27 Sup. Ct.
Rep. 600]; *United States* v. *Sheridan-Kirk Contract Co.* 149
Fed. 813; and *Sparf* v. *United States,* 156 U. S. 51, 103, 39
L. ed. 343, 361, 15 Sup. Ct. Rep. 273.

The third assignment of error, namely, that the court erred in holding that what constituted an extraordinary emergency was not a question of fact for the jury, we have sufficiently discussed in what we have said.

The court below committed no reversible error, and the judgment must be *affirmed, and it is so ordered.*